# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN E. MILLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 21-1068-GBW |
| LT. HIESHMAN, *et al.*, | ) ) ) |
| Defendants. | ) ) |

John E. Miller, James T. Vaughn Correctional Center, Smyrna, Delaware – *Pro se* Plaintiff

Nichola D. Picollelli, Jr., Rebecca Bolinger, and Zachary S. Stirparo, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware – Counsel Lt. Hieshman, Major Kevin Senato, and John Does

**MEMORANDUM OPINION**

May 21, 2025
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

## I. INTRODUCTION

On July 26, 2021, Plaintiff John E. Miller, an inmate at James T. Vaughn Correctional Center (JTVCC) in Smyrna, Delaware, initiated this action with the filing of a Complaint. (D.I. 1.) Plaintiff subsequently paid the filing fee and filed an Amended Complaint, which is now the operative pleading. (D.I. 30.) Now pending before the Court is Defendants Lt. Hieshman and Major Kevin Senato's motion to dismiss the Amended Complaint. (D.I. 31.) The Court grants Defendants' motion to dismiss for the reasons explained below. Dismissal is without prejudice, and Plaintiff will have the opportunity to file a Second Amended Complaint.

## II. BACKGROUND

The Amended Complaint alleges violations of Plaintiff's First Amendment rights to mail, books, and pictures, and Plaintiff's Fourteenth Amendment procedural due process rights, arising from three incidents where the JTVCC mailroom rejected and disposed of Plaintiff incoming mail that occurred between July 2019 and July 2021, for which Plaintiff seeks $3,500 in monetary damages. (D.I. 30 at 6, 16, 23, 26.)

In the first incident, Plaintiff received a rejection notice from the mailroom regarding pictures that had been mailed to him. The mailroom rejected these

1

pictures on the grounds that they were sexually explicit. Plaintiff appealed this decision because he had not ordered sexually explicit pictures, and he believed the mailroom's definition of "sexually explicit" was inaccurate. Plaintiff then received a second notice, informing Plaintiff that the mailroom disposed of the pictures. Plaintiff filed a grievance related to this matter, which was upheld. Plaintiff does not know if the picture sender was given an opportunity to appeal. (*Id.* at 9-10, 23.)

In the second incident, Plaintiff received a rejection notice from the mailroom regarding a book that had been mailed to him. The mailroom rejected the book because it was a hardback. Plaintiff filed a grievance about the incident, which was initially denied but, on appeal, the grievance was upheld based on a facility exception for hardcover books that are educational in nature. Thereafter, Plaintiff wrote letters informing Defendant Hieshman in the mailroom that the grievance had been upheld and requesting to receive the book. Plaintiff also filed a second grievance asking the Grievance Board to notify the mailroom of the outcome of the first grievance and to deliver the book to Plaintiff. Plaintiff then filed a third grievance requesting the book. Thereafter, the mailroom maintained its position that hardcover books were not permitted and further stated that the subject matter of Plaintiff's book did not qualify for exception; thus, Plaintiff filed a fourth grievance. Later, Plaintiff received a notice stating that the book had been disposed of between

2

the filing of Plaintiff's second and third grievance. Disposal was approved by Defendant Hieshman and denied by Defendant Senato. (*Id.* at 10-12, 24.)

In the third incident, Plaintiff received three rejection notices from the mailroom regarding eleven copies of the book, *Bumper to Bumper: The Complete Guide to Tractor and Trailer Operations*, which had been mailed to Plaintiff. According to the notices, the mailroom rejected these books because Plaintiff was not allowed to have more than one copy of any given book. Plaintiff knew this was untrue because he had already received four copies of *Bumper to Bumper*. Plaintiff filed a grievance and reached an informal resolution with Defendant Hieshman, by which the eleven copies would be donated to the JTVCC library. Plaintiff later received a notice stating that the eleven copies were disposed of one month after the informal resolution was reached and that Defendant Hieshman approved of disposal. Plaintiff then filed a grievance regarding disposal of the books, which was denied, and Plaintiff appealed. (*Id.* at 13, 24-25.)

## III. LEGAL STANDARD

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his

3

Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct

alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV. DISCUSSION

### A. Mailroom Rejection of Incoming Pictures

The Court first considers the incident involving the mailroom's rejection of pictures mailed to Plaintiff. Holding the Amended Complaint to a less stringent standard than formal pleadings drafted by lawyers, *see Erickson*, 551 U.S. at 94, this section alleges that prison officials violated Plaintiff's rights under the First Amendment by (1) rejecting his incoming mail without a valid penological reason and (2) maintaining the policy that resulted in this action. If Plaintiff also intends to assert that prison officials violated his procedural due process rights under the Fourteenth Amendment, the Amended Complaint does not clearly state such a claim. Critically, the Amended Complaint also does not specifically name any Defendant involved in this incident.

Since a defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved," and the Amended Complaint identifies no Defendant as being involved, Plaintiff's claims regarding this incident will be dismissed. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Plaintiff will be granted leave to file a Second Amended

5

Complaint that restates Plaintiff's claims arising from the incident, names all Defendants involved, and provides additional information if Plaintiff intends to assert any Fourteenth Amendment claim.

### B. Mailroom Rejection of Incoming Hardback Book

The Court next considers the incident involving the mailroom's rejection of a hardcover book mailed to Plaintiff. This section alleges that prison officials violated Plaintiff's rights under the First and Fourteenth Amendments by (1) rejecting his incoming mail without a valid penological reason, (2) disposing of the book, even though Plaintiff's grievance was upheld, and only notifying Plaintiff after the fact, and (3) maintaining the policies that resulted in these actions. The Amended Complaint does not specify who sent the hardback book to Plaintiff, and it indicates that Defendant Senato did not approve of the hardcover book's disposal, rendering his involvement in any alleged rights violation unclear.

Without specifying the sender of the hardback book, the Amended Complaint appears to fail to state a First Amendment claim arising from this incident. *See Bell v. Wolfish*, 441 U.S. 520, 550 (1979) ("a prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights of MCC inmates"). Plaintiff will be granted leave to file a Second Amended Complaint that restates Plaintiff's claims arising from this incident, specifies the hardcover book's sender, names all

Defendants involved, and clarifies Defendant Senato's involvement. Plaintiff may also provide additional information as to why pre- and post-deprivation processes were either unavailable or inadequate.

### C. Mailroom Rejection of Eleven Incoming Copies of *Bumper to Bumper*

The Court next considers the incident involving the mailroom's rejection of the eleven copies of *Bumper to Bumper*. This section alleges that prison officials violated Plaintiff's rights under the First and Fourteenth Amendments by (1) rejecting his incoming mail without a valid penological reason,[1] (2) disposing of the books, although they should have been donated to the library, per the informal resolution to Plaintiff's grievance, and (3) maintaining the policies that resulted in these actions. The Amended Complaint only alleges the Defendant Hieshman participated in the informal resolution of Plaintiff's grievance and later gave approval for disposal of the books. The Amended Complaint does not otherwise state Defendant Hieshman's involvement, if any, and it does not state the involvement of any other currently living Defendant. (*See* D.I. 16.) Plaintiff will

---

[1] The Amended Complaint alleges that the mailroom rejected the books on improper grounds in asserting that Plaintiff was not allowed to possess more than one copy of the book, while Defendants' motion to dismiss suggests the books were rejected due to a Delaware Department of Corrections policy that limits the number of books permitted in an inmate's cell. (*Compare* D.I. 30 at 13, 25, *with* D.I. 31 at 3.) Further factual development appears necessary to determine whether the policy or practice of rejecting the copies of *Bumper to Bumper* was "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

7

be granted leave to file a Second Amended Complaint that restates Plaintiff's claims arising from this incident and names all Defendants involved. Plaintiff may also provide additional information as to why pre- and post-deprivation processes were either unavailable or inadequate.

## V. CONCLUSION

For the reasons discussed, the Court will grant Defendants' motion to dismiss. (D.I. 31.) The Amended Complaint (D.I. 30) will be dismissed without prejudice, and Plaintiff will be granted leave to file a Second Amended Complaint to remedy the deficiencies discussed above.

An appropriate Order will be entered.